## Herbert H. Stimpson *vs.* James D. Green.

If a bill in equity brought to ascertain the amount of the profits of a joint enterprise, and to obtain a decree for the payment of the plaintiff's share thereof to him, has been referred to a master, who in his report allows the defendant to charge a salary for his superintendence of the work, without reciting the evidence upon which he makes such allowance, this court will not sustain an exception to the report on account thereof, although in the written agreement under which the enterprise was undertaken there was no provision for the payment of such salary.

If in such case the defendant has rendered an account, but some of the items are in dispute, and the balance is not liquidated, and no special demand is made upon him, interest on the balance found due should only be allowed from the commencement of the suit.

A., having a contract for the manufacture and sale of three thousand rifles to the Russian government, spent considerable time in collecting men, and in procuring a shop, machinery, tools and materials, and in superintending the work, and during this time paid out moneys for his personal expenses, which he charged to his own account, and not to the cost of the rifles. Afterwards he assigned the contract to B., who entered into an agreement with C., in consideration of moneys advanced by the latter, to divide with him " the net profits accruing from the manufacture and sale " of the rifles. The master in

chancery, to whom a bill in equity for the adjustment of the account between B. and C. was referred, found that said personal expenses of A. were not properly chargeable to the cost of the rifles; and this court refused to sustain an exception to such finding.

Said agreement between B. and C. provided that, whereas the Russian government had advanced $30.000, without interest, under their contract, which money had been expended in the purchase of material and the construction of machinery and tools, it was agreed that in the estimation of the net profits no interest should be charged on the amount already expended in said machinery, tools and materials. In fact, more than $30,000 had been thus expended, the excess having been borrowed. *Held,* that the interest paid for such excess should be charged to the cost of the rifles.

A. obtained his said contract with the Russian government at St. Petersburg, and paid certain sums in travelling in Europe before and while obtaining it, and also certain other sums for aid in obtaining it. *Held,* that the sums so paid by him should not be charged to the cost of the rifles, under the agreement between B. and C.

BILL IN EQUITY brought to ascertain the amount of the profits of the manufacture and sale of certain rifles, under an agreement between the plaintiff and the defendant, dated April 28th 1862, and to obtain a decree for the payment of the plaintiff's share thereof to him. The material portions of the contract were as follows :

" Whereas the said Green is the assignee of a certain contract in writing, made between the Russian government and J. Durell Green, of the United States army, for the manufacture and sale to the said Russian government, by the said J. Durell Green, of three thousand breech-loading rifles, to be constructed according to letters patent issued to him from the patent office of the United States, which contract is now in the process of fulfilment at Millbury in said Massachusetts : And whereas the said James D. Green has not sufficient capital to complete the said contract, and the said Stimpson has agreed to advance money for that purpose, and to take up certain notes given and debts incurred, including money to meet the interest to become due on three mortgages on the said machinery and stock : Now, therefore, the said Herbert H. Stimpson, in consideration of the premises and of the covenants of the said James D. Green hereinafter contained, hereby agrees to furnish and provide sufficient capital, and to discharge the bills and take up the notes (as they mature) set forth in the schedule annexed hereto, and marked A. [He further agreed to furnish certain other funds therein speci-fied.]

" And the said James D. Green, in consideration of the advances aforesaid, to be made by the said Stimpson, and of other good and valuable considerations, hereby covenants and agrees with the said Stimpson, his heirs and assigns, that he, the said Stimpson, shall receive back from such moneys as shall be received from the Russian government in payment for said rifles (or from any other party or parties to whom the same may be sold) the full amount of his advances made by virtue of this indenture, with interest, and shall further be entitled to and receive one half of the net profits accruing from the manufacture and sale of the said three thousand rifles, together with one half of the net profits accruing from the manufacture and sale of one hundred additional rifles now making at said Millbury.

" And whereas the Russian government have advanced thirty thousand dollars, or thereabout, without interest, under said contract, which moneys have been expended in the purchase of material and the construction of machinery and tools required for the completion of said contract, (and for the manufacture of certain other rifles not included therein to the number of seven hundred,) it is agreed that in the estimation or calculation of the net profits aforesaid, if said Russian contract is completed, no interest shall be charged on the amount already expended in said machinery, tools and materials.

" It is further agreed by the said Stimpson and the said Green, that if, after the completion of the said contract with the Russian government, the said Stimpson shall desire and elect to continue the manufacture of said firearms, or other military weapons and ammunition, with the said Green, he shall have the right to do so ; in which case each of the said parties shall furnish one half of the necessary capital, workshops, fixtures, machinery, tools, and materials ; and shall be entitled to and receive one half of the net profits accruing from such manufacture, whether under contracts from foreign governments or that of the United States, or otherwise."

The case was submitted to a master, who reported the following facts :　J. Durell Green, the defendant's son, entered into the said contract with the Russian government in 1860 ; and they

advanced to him the money referred to in the foregoing agreement. He procured a shop, machinery, tools and materials, and commenced the manufacture of 3725 rifles in all. Having in 1861 entered the service of the United States, he employed the defendant, at a salary of fifteen hundred dollars per year, to take charge of and go on with the manufacture of said rifles. The defendant continued so to act for the period of a year, when, having become embarrassed for funds to carry on the business, he took an assignment of the Russian contract, the machinery, tools and materials, and of six hundred completed rifles, and entered into the contract with the plaintiff, which is the subject of this suit. During the negotiations therefor, the defendant submitted to the plaintiff two papers, marked A. and B., which were received in evidence, against the defendant's objection. These papers are sufficiently referred to in the opinion.

When the defendant took charge of the manufacture, he entered upon the books kept by him all the moneys received and expended by him in the course of the business. In order to ascertain the profits on the 3000 rifles manufactured for the Russian government, one half of which the plaintiff seeks to recover, it was necessary to find their actual cost; and, as no separate account was kept with these rifles, it was necessary, in the first place, to find the cost of the 3725 rifles manufactured in the shop, of which the rifles manufactured under the contract with Russia were a part.

Among other items, the defendant charged to the cost of the rifles the sum of $2800, as his salary for superintending the business from the time when he began in 1861. The plaintiff contended that this sum was not properly chargeable, because he and the defendant were partners in this enterprise. But the master allowed the defendant to charge that sum as a part of the cost of manufacturing the rifles.

From August 1860 to July 1861, J. Durell Green was employed in collecting his men, procuring a shop, machinery, tools and materials, and superintending the work; and during this time his personal expenses amounted to $1289.55, which he charged to his private account, and not to the cost of the rifles.

The defendant contended that under his contract with the plain tiff these expenses were properly chargeable to the cost of the 3725 rifles; but the master held otherwise.

The defendant, in the prosecution of the business, had borrowed money, over and above the amount advanced by the Russian government, upon which, before his agreement with the plaintiff, he had paid interest to the amount of $1250; and he contended that this sum was properly chargeable to the cost of the 3725 rifles; but the master held otherwise.

J. Durell Green procured his said contract at St. Petersburg, and engaged a German by the name of Buhl to assist him in procuring it, and to superintend the delivery and acceptance of the rifles, if the contract should be secured; and agreed to pay Buhl, as his compensation for his services in obtaining the contract, four shillings on each rifle. On obtaining the contract he gave his note to Buhl, in pursuance of this agreement, for six hundred pounds sterling, one half of which he shortly after paid; and he expended in travelling and otherwise in Europe, before and in obtaining this contract, $4560, including the three hundred pounds paid to Buhl. After the defendant had become the assignee of the contract, he took up his son's note to said Buhl, which amounted to $2560. These sums did not appear upon the books kept by J. Durell Green or the defendant; and the plaintiff had no knowledge thereof until about the 15th of August 1863, when the defendant rendered to him an account. The defendant contended that this expenditure, with the above sum of $4560, should be deducted from the total amount paid and advanced by the Russian government, and that he should be charged with the balance only; but the master disallowed this claim.

Certain other questions arose, concerning which the evidence was stated in the master's report; but as no decision of any question of law was made in regard to them, the evidence is omitted here.

The master stated an account, in conformity to the foregoing findings by him, showing a balance due from the defendant to the plaintiff of $9864.40. The plaintiff claimed interest on this

sum from August 15th 1863, when the defendant rendered to him the account; but the master allowed interest only from the date of the bill in equity.

The plaintiff alleged the following exceptions to the master's report:

" 1. For that the master has erred in allowing, as part of the cost of the 3725 rifles, the sums credited by the defendant as his salary, amounting to $2800.

" 2. For that the master has erred in not allowing interest from the time when the defendant rendered his account to the plaintiff, viz., from August 15th 1863."

The defendant also alleged the following exceptions:

" 1. For that the master has erred in disallowing the item of $1289.55, the expenses of J. Durell Green, as part of the cost of the 3725 rifles.

" 2. For that the master has erred in disallowing, as part of the cost of the 3725 rifles, the items of interest paid by the defendant on money borrowed and expended by him in the prosecution of the business, amounting in the aggregate to $1250.

" 3. For that the master has erred in charging the defendant with the sum of $4560, expended by J. Durell Green in Russia.

" 4. For that the master has erred in not allowing the defendant the sum of $2560, paid by him to Buhl.

" 5. For that the master has erred in not allowing the £300 paid by J. Durell Green to Buhl, as part of the cost of the three thousand rifles."

6. [This exception related to a question concerning which the evidence is not reported.]

" 7. For that the master has erred in receiving in evidence the two papers marked A. and B."

At the hearing, before *Gray,* J., it was admitted that the plaintiff furnished money according to the terms of the contract between him and the defendant; and the case was reserved for the determination of the full court.

*C. P. Curtis,* for the plaintiff.

*H. W. Paine,* (*N. St.J. Green* with him,) for the defendant.

CHAPMAN, J.    The plaintiff makes two objections to the master's report.

"1. For that the master has erred in allowing, as part of the cost of the 3725 rifles, the sums credited by the defendant as his salary, amounting to $2800." Whether this charge should be allowed or not was a question of fact, depending upon the evidence. It does not depend entirely upon the question whether the parties were partners; for a partner is entitled to a salary if it is so agreed. Various facts appear, some tending to show that it should be allowed, and some having a contrary tendency. The conclusion of the master as to the fact is to be deemed *prima facie* correct, and we can see no legal ground for sustaining the objection to it.

"2. For that the master has erred in not allowing interest from the time when the defendant rendered his account to the plaintiff, viz., from August 15th 1863." Interest is allowed from the date of the bill in equity, and we think the plaintiff is not entitled to interest from an earlier date. An account had been rendered to him, but some of the items were in dispute; there was no liquidated balance, and the plaintiff had not made a demand before the date of his writ. See *Hunt* v. *Nevers*, 15 Pick. 500.

The defendant also makes several objections to the report.

"1. For that the master has erred in disallowing the item of $1289.55, the expenses of J. Durell Green, as part of the cost of the 3725 rifles." A majority of the court are of opinion that the report is right in this respect, because these expenses did not compose any part of the cost of manufacturing the rifles, within the scope of the agreement. They were personal expenses incurred while he was preparing to manufacture the rifles, before either of these parties were interested in the matter, and it does not appear from the evidence that the report is erroneous.

"2. For that the master has erred in disallowing, as part of the cost of the 3725 rifles, the items of interest paid by the defendant on money borrowed and expended by him in the prosecution of the business, amounting in the aggregate to $1250.' This objection depends upon the construction of one of the

clauses of the contract between the parties. This clause recites that, whereas the Russian government had advanced $30,000 or thereabout, which moneys had been expended in the purchase of materials, &c., it was agreed that no interest should be charged upon the moneys expended in said machinery, tools and materials. As the money received from the Russian government was, under the contract, to be used for the benefit of both parties, it is obvious that no interest ought to be charged for the machinery, tools or materials which had been purchased with it. A majority of the court are of opinion that, by the true construction of that clause, it does not extend to machinery, tools or materials which were purchased with the private funds of the party, and that the item ought to have been allowed. The report is to be corrected in this particular.

As to the 3d, 4th and 5th objections, the court are unanimously of opinion that the report is correct, and that they should be overruled on the same ground on which the first objection is overruled, namely, that the items did not enter into the cost of manufacturing the rifles, within the meaning of the contract.

The 6th objection depended entirely upon the evidence before the master, and we cannot see that he decided erroneously.

" 7. For that the master has erred in receiving in evidence the two papers marked A. and B." Paper A. was exhibited by the defendant to the plaintiff while they were negotiating respecting the contract which they afterwards made. It contained an estimate of the cost of the rifles, and among the items of cost the defendant's salary was not included. It was evidence tending to show that the salary ought not to be allowed. But as the master has allowed it, the defendant has not been injured by the evidence. Paper B. was an estimate, and did not include the expenses which we have held ought not by the terms of the contract to be included in the cost of the rifles. As it has not influenced the result, it is immaterial.      *Decree accordingly.*